IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

DALE RAYE SEAGROVES, JR.                                          PLAINTIFF

v.                           Civil No. 1:06-cv-01053

KEN JONES, Sheriff,
Union County, Arkansas                                           DEFENDANT

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The plaintiff, Dale Raye Seagroves, Jr., (hereinafter "Seagroves" or "Plaintiff") filed this civil

rights action pursuant to 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis*.  Seagroves

is currently incarcerated in a unit of the Arkansas Department of Corrections.  The incidents at issue

in this case occurred while he was incarcerated at the Union County Detention Center.

Defendant filed a summary judgment motion (Doc. 10).  To assist Seagroves in responding

to the summary judgment motion, a questionnaire was propounded (Doc. 13) by the Court.  The

questionnaire was initially returned to the court as undeliverable.  However, the court was able to

determine Seagroves had been transferred to another unit of the ADC and a change of address was

entered on his behalf (Doc. 14).  Seagroves was given an extension of time to respond to the

questionnaire (Doc. 14).  Seagroves filed a response to the questionnaire (Doc. 15).  The summary

judgment motion is before the undersigned for issuance of this report and recommendation.

### 1.  Seagroves' Claims

In this case Seagroves contends his constitutional rights were violated when a known trouble maker was put in the pod[1] with him.  Seagroves alleges he was attacked by a fellow inmate and seriously injured.  Although he received emergency medical care following the attack, Seagroves alleges he was denied proper follow up medical care.

### 2.  Defendant's Motion

The Defendant has filed a Motion for Summary Judgment contending Seagroves cannot prove that a custom or policy of Union County resulted in a violation of his constitutional rights.  First, with respect to the failure to protect claim, Defendant maintains there is no evidence of deliberate indifference to Seagroves' safety.  Second, Defendant contends there is no evidence of deliberate indifference to Seagroves' serious medical needs.

### 3. Background

Seagroves was booked into the Union County Detention Center (UCDC) on February 23, 2006.  *Plaintiff's Response* (*hereinafter Resp.*)(Doc. 15) at ¶ 1.  He had previously been sentenced to three years in a community correctional facility and his probation had been revoked.  *Id.* at ¶ 2.

On March 17, 2006, Seagroves was attacked by a fellow inmate, Farrell Willis.  *Resp.* at ¶ 3.  Prior to March 17th, Seagroves states he had been in an argument with Willis.  *Id.* at ¶ 4. Seagroves indicates he told Officer Jablowski that he had the argument with Willis and would like to be moved to a different pod or for Willis to be moved to a different pod.  *Id.* at ¶ 5(A).  Seagroves indicates Jablowski told him to "[d]eal with it like a man."  *Id.*

---

[1]A pod is similar to a cellblock in older detention centers.  The term is typically used to refer to a group of cells around a central day-room.  The materials submitted by the defendant in this case contain no specifics about the pod to which Seagroves was confined.

Seagroves asserts that Willis had bitten another inmate.  Seagroves was asked, in the questionnaire propounded by the Court, to state:  (a) who the inmate was; (b) when this occurred; (c) how he knew about this; and (d) whether he believed Sheriff Jones was aware of the incident. Seagroves responded:

> Kenneth Owens.  I was placed in the same pod with this inmate.  He told me Farrell Willis bit him.  He showed me the scar on his chest.  It was a perfect print of teeth. He said that they moved Farrell Willis to another pod when that happened.  So I believe Sheriff Jones should have been aware of the attack.

*Resp.* at ¶ 5(B).

Debbye Howard is the jail nurse for the UCDC.   *Resp.* at ¶ 7.  Howard was never made aware of any problems involving Seagroves and Willis. *Id.* at ¶ 13.   On March 17th, at about 4:15 p.m., after the altercation, Seagroves was brought to Howard's office with an injury to his bottom lip.  *Id.*  at ¶ 8.  Howard advised Chief Thomas that Seagroves needed to go to the hospital.  *Id.*

Seagroves was taken to the emergency room for medical treatment.  *Resp.* at ¶ 6.  He received multiple sutures. *Resp.* at  10.  According to the hospital records, Seagroves was given a prescription for Augmentin.  *Defendant's Exhibit* (*hereinafter Deft's Ex.*) E.  Nurse Howard also asserts by affidavit that Seagroves was administered the Augmentin.  *Deft's Ex.* B at ¶ 4.  Seagroves, however, states he never received any medication other than 800 mg. of Ibuprofen.  *Resp.* at ¶ 10 & ¶ 11.

The sutures were removed after five days.  *Resp.* at ¶ 12.  According to Seagroves, one suture was left in his lip and he put in a sick call lip because of it.  *Id.* at ¶ 14.  Seagroves states the lip healed over this suture.  *Id.*  He indicates it took three weeks to see the nurse.  *Id.*  By then, Seagroves had another inmate, Lonnie Miller, remove the suture.  *Id.*

It is the policy of the UCDC that when medical attention is requested by an inmate medical attention is promptly provided. *Resp.* at ¶ 15. Ken Jones was the Sheriff of Union County while Seagroves was incarcerated at the UCDC. *Id.* at ¶ 16. Sheriff Jones was not involved in any decisions regarding Seagroves' medical treatment while he was at the UCDC. *Deft's Ex.* C at ¶ 5. Seagroves never spoke to Sheriff Jones while he was incarcerated at the UCDC. *Id.* at ¶ 17. Sheriff Jones has no independent knowledge of the physical altercation between Seagroves and Willis. *Resp.* at ¶ 19. Sheriff Jones was not aware of any threats made by Willis to Seagroves or any other inmate while Willis was incarcerated at the UCDC. *Deft's Ex.* C at ¶ 4.

## 4. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case

founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## 5. Discussion

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that each defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). Mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986).

Keeping these general principles in mind, I turn to an examination of the specific constitutional rights at issue in this case. I examine each of Seagroves' claims in turn.

### A. Failure to Protect

The Eighth Amendment imposes a duty on the part of prison officials to protect convicted prisoners from violence at the hands of other prisoners. *Perkins v. Grimes*, 161 F.3d 1127, 1129 (8th Cir. 1998). In *Riley v. Olk-Long*, 282 F.3d 592 (8th Cir. 2002), the court stated:

> An Eighth Amendment claim for failure to protect is comprised of two elements. First, an "inmate must show that [he] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Second, the inmate must establish that the defendant prison official recklessly disregarded that risk. *Jackson v. Everett,* 140 F.3d 1149, 1151 (8th Cir. 1998). "For the purposes of failure to protect claims, it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to [him] or because all prisoners in [his] situation face such a risk." *Hott v. Hennepin County, Minn.,* 260 F.3d 901,

906 (8th Cir. 2001) (internal quotations omitted). The question is whether a prison official has a "sufficiently culpable state of mind," meaning that [he] is deliberately indifferent to an inmate's safety. *Farmer,* 511 U.S. at 834 (internal quotation omitted). The prison official's state of mind is measured by a subjective, rather than an objective, standard. *Id.* at 838-39; *see also Jackson,* 140 F.3d at 1152 ("[D]eliberate indifference must be viewed from [defendant's] perspective at the time in question, not with hindsight's perfect vision."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference." *Farmer,* 511 U.S. at 837.

*Riley,* 282 F.3d at 595.  *See also Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002)

Thus, to prevail, Seagroves must show:  (1) that his incarceration with Willis posed a substantial risk of serious harm, and (2) the defendant knew of and disregarded an excessive risk to Seagroves' safety.  *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003).

To establish the second component, Seagroves must show that defendant acted, or failed to act, with deliberate indifference to Seagroves' safety.  *Id.*  Negligence is not sufficient.  *Id.*  Even if the conduct was unreasonable, this is not enough because "reasonableness is a negligence standard."  *Id.* at 742  (internal quotation marks and citation omitted).  Further, the United States Court of Appeals for the Eighth Circuit has noted that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm."  *Id.* at 740-741 (internal quotation marks and citation omitted).

In *Perkins v. Grimes*, 161 F.3d 1127 (8th Cir. 1998), the district court "agreed that defendants were on notice that Wilson was a disruptive inmate," but found defendants "had no notice that Wilson posed a threat of serious injury to Perkins because Perkins did not effectively alert them that he faced such a threat."  *Id.* at 1130.  Further, the district court found that "the defendants periodic

-6-

cell checks yielded no information that would have put them on such notice." *Id.*  The Eighth Circuit

Court of Appeals found no clear error.  *Id.*  It noted that "[a]lthough the testimony indicated that

Wilson was an easily provoked detainee, the evidence also shows that Perkins and Wilson had

previously been housed together without incident and that Perkins' jailers neither knew, or had

reason to know, that Wilson was a violent sexual aggressor, either on this or on a previous occasion."

*Id.*

In this case, I believe Sheriff Jones is entitled to summary judgment.  Prior to the attack on

Seagroves the only indication of any possible trouble between Seagroves and Willis is that the two

had an argument.  *Resp.* at ¶ 5(A).  Even then, Seagroves does not suggest Willis threatened him

physically or that he reported that he feared he would be physically attacked.  *Id.*

Seagroves did not personally speak to, or communicate with, Sheriff Jones regarding Willis,

his argument with him, the attack on him, or the attack on Owens.  *Resp.* at ¶ 17, ¶ 18, ¶ 19.

Seagroves does not contend Sheriff Jones directly participated in any of the events.  Seagroves makes

no allegation that a failure to properly supervise and train the offending employee caused a

deprivation of constitutional rights.  He merely asserts that "Sheriff Jones is over all employees at

the UCDC . . . [and] is liable for all actions of his officers & employees."  *Resp.* at ¶ 22.

This is simply insufficient to establish that genuine issues of material fact exist as to whether

Seagroves was incarcerated under conditions posing a substantial risk of serious harm and as to

whether Sheriff Jones recklessly disregarded the risk.  Nothing before the court suggests there was

any reason to suspect an attack was going to occur.  It cannot be said that there is a genuine issue of

material fact as to whether Sheriff Jones acted, or failed to act, with deliberate indifference to the safety of Seagroves.

A supervisor may not be held liable for a section 1983 violation on the basis of *respondeat superior*. *See Szabla v. City of Brooklyn Park*, 486 F.3d 385, 397 (8th Cir. 2007)(no *respondeat superior* liability under § 1983–no liability merely because official employs the individual who allegedly violated the plaintiff's constitutional rights); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility). In other words, Sheriff Jones is not liable merely because he has general supervisory authority over the facility. *See Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007)("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement."). Further, the record in this case is devoid of any suggestion of the existence of a custom or policy on which to hold Union County liable. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)(holding that a plaintiff seeking to impose § 1983 liability on a municipality must show an official policy or a widespread custom or practice of unconstitutional conduct that caused the deprivation of the plaintiff's constitutional rights). In short, there is nothing to suggest Seagroves' alleged constitutional deprivation was caused by a custom or policy of Union County. *See e.g., Pietrafeso v. Lawrence County*, 452 F.3d 978, 982 (8th Cir. 2006)("A county is liable if an action or policy itself violated federal law, or if the action or policy was lawful on its face but led an employee to violate a plaintiff's rights [and] was taken with 'deliberate indifference' as to its known or obvious consequences.")(internal quotation omitted)). Summary judgment is appropriate regarding Seagroves' failure to protect claim.

### B.  Denial of Medical Care

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted).  "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." *Hartsfield v. Colburn*, 491 F.3d 394,  2007 WL 2050849, *2 (8th Cir. 2007).  In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for all claims that detention center officials have denied inmates, whether in pretrial or convicted status, adequate medical care. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle  v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  The deliberate indifference standard includes "both an objective and a subjective component:  'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'"  *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting  Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).  Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)).  *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough

that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

Following his injury, Seagroves was taken to the hospital for emergency medical treatment. He contends it was the follow-up medical treatment that was lacking. Specifically, he maintains he did not receive his prescribed medication, Augmentin, and when the sutures were removed, the doctor left one suture in his lip. *Resp.* at ¶ 10, ¶ 11, & ¶ 14. When he submitted a medical request about the suture remaining in his lip, Seagroves contends it took three weeks for him to be able to see the nurse. *Id.* at ¶ 14. When asked to describe how Sheriff Jones exhibited deliberate indifference to his serious medical needs, Seagroves responded: "He is over Nurse Debbye Howard who did not administer my medication & who did not promptly answer my sick call." *Id.* at ¶ 22.

I find no genuine issues of material fact as to whether Sheriff Jones was deliberately indifferent to Seagroves' serious medical needs. Seagroves makes no argument that Sheriff Jones was personally involved in any decisions regarding his medical treatment. *Resp.* at ¶ 20. *See Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility). As noted above, Sheriff Jones is not liable merely because he has general supervisory authority over the facility or because he employed Debbye Howard. *See Szabla v. City of Brooklyn Park*, 486 F.3d 385, 397 (8th Cir. 2007)(no respondeat superior liability under § 1983–no liability merely because official employs the individual who allegedly violated the plaintiff's constitutional rights); *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007)("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement."). Further, the record in

this case is devoid of any suggestion of the existence of a custom or policy on which to hold Union County liable.  *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)(holding that a plaintiff seeking to impose § 1983 liability on a municipality must show an official policy or a widespread custom or practice of unconstitutional conduct that caused the deprivation of the plaintiff's constitutional rights). In short, there is nothing to suggest Seagroves' alleged constitutional deprivation was caused by a custom or policy of Union County.

## 6. Conclusion

For the reasons stated, I  recommend that the defendant's motion for summary judgment (Doc. 10) be granted.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **21st day of August 2007.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE